IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHLEEN WION, as Administratrix ) <br> of the ESTATE OF NOAH SAMUEL ) <br> WION, ) <br>     Plaintiff ) <br> ) <br> v. ) <br> ) <br> HUNTER K. RODLAND, et al., ) <br>     Defendants. ) | C.A. 17-cv-00135 Erie <br><br> District Judge Fischer <br> Magistrate Judge Baxter |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

For the reasons that follow, is it respectfully recommended that the School District Defendants' motion to dismiss [ECF No. 6] be denied. It is further recommended that the motion to dismiss and motion to strike filed on behalf of Defendants Sandin and Durham [ECF No. 4] be denied as to the dismissal of Plaintiff's complaint, and denied as to references to duties that may have been owed by Durham at Paragraphs 66 and 78 of the complaint, but granted without prejudice as to the motion to strike references to "recklessness" from Paragraph 135.

**II.    REPORT**

    **A.  Relevant Procedural History**

Plaintiff Kathleen Wion brings this wrongful death, survival and civil rights action for damages arising out of a tragic vehicular accident involving her minor son, Noah Samuel Wion. Her complaint alleges that Noah died from injuries sustained when he was struck by a car operated by Defendant Hunter K. Rodland ("Rodland") on February 9, 2017. The accident occurred as eleven-year-old Noah was crossing State Route 430 at his designated bus stop, after

1

exiting a school bus owned and operated by Defendant Durham School Services, LP ("Durham"), and driven by Durham's employee, Defendant Aaron Sanden ("Sanden").

The complaint also names as defendants Wattsburg Area School District ("WASD") and its Superintendent of Schools, Kenneth A. Berlin ("Berlin"), as well as each of the nine members of the School District's Board of School Directors[1] who were in office on the date of the accident (collectively, "the School District Defendants").

Plaintiff alleges state law claims for wrongful death and survival against Rodland, Durham and Sandin and, as to the School District Defendants, alleges claims pursuant to 42 U.S.C. §1983, predicated upon a state-created-danger theory of liability. Plaintiff also alleges a vicarious liability claim against Durham arising out of its employer relationship with Sandin. The School District Defendants removed Plaintiff's action from the Court of Common Pleas of Erie County (Pennsylvania) to this Court and have filed a motion to dismiss, challenging the sufficiency of Plaintiff's allegations to state a claim upon which relief may be granted, and raising qualified immunity as a bar to suit. [ECF Nos. 1, 6]. Defendants Durham and Sandin have also filed a motion to dismiss and a motion to strike certain allegations as immaterial and impertinent. [ECF No. 4]. The motions have been fully briefed by all parties, and are ripe for disposition.

### B. Factual Background

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept the factual allegations in the Complaint as true and draw all reasonable inferences in Plaintiff's favor. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211–12

---

[1] The School Board Directors named by Plaintiff are Eric Duda, William Hallock, Nancy McNally, Joshua Paris, Martin Pushchak, Brenda Sanberg, Aaron Snippert, Amanda Thayer-Zacks and Anthony Pushchak (collectively, the "School Board Directors").

(3d Cir. 2009). Therefore, for the purposes of disposition of the pending motions to dismiss, the essential facts are as follows.

On February 9, 2017, Noah and his sister boarded Wattsburg Middle School Bus #5 for the ride home from school. The bus was operated by Sandin, Durham's designated driver, who proceeded along the scheduled route to State Route 430, a roadway controlled by a 50 mph speed limit. Upon arriving at Noah's unmarked bus stop on the southeastern berm of the road, Sandin turned on his amber warning lights indicating a stop, activated the driver-side warning bar, and opened the door. Noah's sister exited the bus and crossed the roadway to the Wion's driveway, but Noah did not immediately follow. Noah then disembarked and began crossing the road. Neither he nor Sandin were aware that Rodland, driving a 2007 Jeep Cherokee, was approaching along Route 430 from the north, behind the school bus. Rodland drove over the crest of a vertical curve in the road and encountered the stopped bus. Unable to stop in time due in part to winter weather conditions, Rodland's vehicle struck Noah, resulting in catastrophic injuries that led to Noah's death the following day.

Prior to the 2016-2017 school term, the Wattsburg School District provided transportation services directly to its students, and employed its own bus drivers. However, in a move estimated to save the District approximately $2.2 million over a five-year period, the School District Defendants sold all District-owned school buses and contracted with Durham to provide transportation services for its students. Defendant Berlin, in his capacity as Superintendent, and with Durham's alleged participation, prepared a district map and schedule, and selected each bus stop and route. [ECF No. 1-1, ¶¶ 51, 138]. The School Board Defendants approved the contract, routes and bus stops, including Noah's afternoon bus stop, at a School Board meeting on August 15, 2016. [ECF No 1-1, ¶ 55].

3

At the time of the accident, Noah and his four siblings attended Wattsburg schools, necessitating one bus from Wattsburg Elementary School, one from Wattsburg Middle School and one from Wattsburg High School. In all, three separate trips were made each morning to transport the Wion children to school, and three trips home each afternoon. The designated route for five of the six trips permitted pick-up and drop-off at a location adjacent to the Wion driveway. The scheduled bus route for Noah's trip each afternoon required him to cross Route 430 to reach his home, at an unmarked location and without aid of a traffic signal warning drivers of an approaching school bus stop.

Plaintiff alleges that the School District's selection of the afternoon bus stop placed Noah in jeopardy, and that it was foreseeably and unreasonably dangerous, given the 50 mph speed zone on a roadway, the absence of traffic signals or bus stop warning signs, and the contour and topography of the road, which limited visibility to vehicles or pedestrians. In particular, the bus stop was located south of a vertical curve that blocked visibility of pedestrians or vehicles on the roadway from drivers approaching from the north. Visibility was further hampered by the snowy conditions on the day of the accident, which were typical for the area at that time of year. Plaintiff alleges that the risks of having students cross Route 430 "could have easily been eliminated by re-routing Bus 5 so that all passenger discharges were on the right side of the highway, thereby eliminating the need for students to cross dangerous roads even if it cost slightly more and took marginally more time." [ECF No. 1-1, ¶ 56].

The complaint alleges that the negligent and otherwise reckless conduct of Defendants Durham and Sandin also contributed to Noah's death, by utilizing and/or participating in the selection of the designated bus stop and route, regardless of the obvious dangers posed by the location. [ECF No. 1-1, ¶¶ 70-77, 138]. Further, in light of the speed limit, and visibility issues

4

caused by the topography, curve of the road, and typically snowy conditions, Durham was negligent in failing to request the erection of a bus stop warning sign so that drivers heading south on Route 430 would be alert for children crossing the road. [ECF No. 1-1, ¶ 78]. Durham also is alleged to be vicariously liable for Sandin's negligence in opening the bus door and permitting Noah to exit before confirming that the roadway was clear of any approaching vehicles. [ECF No. 1-1, ¶¶ 83-100, 106-08, 134].

### C. Standard of Review

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. *Odd v. Malone*, 538 F.3d 202, 205 (3d Cir. 2008). While a complaint does not need detailed factual allegations to survive the motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and sufficient "to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.... Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Twombly*, 550 U.S. at 557).

5

In other words, at the motion to dismiss stage, a plaintiff is required to make "a showing' rather than a blanket assertion of an entitlement to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Id.* at 234 (quoting *Twombly*, 550 U.S. at 556 n. 3).

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, Defendants Durham and Sandin seek to strike from the complaint Plaintiff's allegations of recklessness and allegations as to certain duties they contend are not owed by or applicable to Durham. Rule 12(f) of the Federal Rules of Civil Procedure allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Simmons v. Simpson House, Inc.*, 224 F. Supp.3d 406, 421 (E.D. Pa. 2016) (quotation and citation omitted). "Relief under Rule 12(f) is generally disfavored and will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Id*. (quotation and citation omitted). "Motions to strike are decided on the pleadings alone." *Keller v. Lackawanna County*, 2017 WL 3268154, at *2 (M.D. Pa. Aug. 1, 2017) (quotation and citation omitted).

### D. School District Defendants' Motion to Dismiss

The School District Defendants seek dismissal of Plaintiff's claims, arguing that Plaintiff has not stated a state-created danger claim and, further, that each of the School District Defendants is entitled to qualified immunity. The assertion of qualified immunity in this matter

6

is "inextricably intertwined with and directly implicated by" the legal sufficiency of facts alleging a state-created danger. *L.R. v. School District of Philadelphia*, 836 F.3d 235, 241 (3d Cir. 2016) (internal quotes omitted).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* at 231. "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818–19.

In determining whether qualified immunity applies, the court conducts a two-pronged inquiry. *Pearson*, 555 U.S. at 232. First, the court must determine "whether the facts that the plaintiff has alleged ... make out a violation of a constitutional right." *Pearson*, 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the [government official] is entitled to immunity." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002). If, however, the plaintiff can establish a constitutional violation, then the court must proceed to the second prong and determine "'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable state official that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "This is

an objective inquiry, to be decided by the court as a matter of law." *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004).

### 1. Fourteenth Amendment State-Created Danger Claim

As indicated, to sustain her claims against the School District Defendants, Plaintiff must prove that each, acting under color of state law, deprived her decedent of a right secured by the Constitution or laws of the United States. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995); *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005); 42 U.S.C. § 1983.

Plaintiff's particular claims are derived from the Fourteenth Amendment Due Process Clause, which provides that "[n]o state shall deprive any person of life, liberty, or property without due process of law." U.S. Const. amend XIV, § 1. The Due Process Clause has a substantive component, which "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Collins v. City of Harker Heights Tex.*, 503 U.S. 115, 125 (1992) (internal quotation marks omitted). This includes protecting citizens where "the state acts to *create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Sanford v. Stiles*, 456 F.3d 298, 304 (3d Cir. 2006) (emphasis in original). However, as explained in *DeShaney v. Winnebago County Dept. of Social Services*, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.*, 489 U.S. 189, 195 (1989). Accordingly, the Court of Appeals for the Third Circuit has recognized a successful state-created danger claim only when a plaintiff pleads facts that, if proven, would establish the following:

1. the harm ultimately caused [by the state actor's conduct] was foreseeable and fairly direct;

2. the state actor acted with a degree of culpability that shocks the conscience;

3. a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

4. a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Mann v. Palmerton Area School District*, ___ F.3d ___, 2017 WL 4172055, at *3 (Sept. 21, 2017) (quoting *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006) (internal quotation marks and footnotes omitted)).

Accepting Plaintiff's well-pleaded facts as true and disregarding all legal conclusions, the facts alleged in Plaintiff's complaint are sufficient to state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679. The first element of a state-created danger claim concerns whether the harm sustained as a result of the defendant's conduct was "foreseeable and fairly direct…. More specifically, this 'require[s] a plaintiff to allege an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm.'" *Mann*, 2017 WL 4172055, at *3 (quoting *Phillips v. County of Allegheny*, 515 F.3d at 235).

Plaintiff alleges that the School District Defendants approved the location of Noah's bus stop, and did so while aware of the posted speed limit, the limited visibility conditions of the roadway at issue, including the vertical curve, the blowing snowy conditions common to the location, and the absence of any device or sign to warn drivers of an approaching school bus stop. [ECF No. 1-1, ¶¶ 150 – 151, 162]. Plaintiff also alleges that these Defendants were aware that the route selected would require an eleven year-old-boy to cross the highway without benefit

9

of a crosswalk, or a crossing guard. These circumstances, if shown to be true through discovery and trial, created a direct and foreseeable risk of the harm actually suffered by Plaintiff's decedent; i.e. that he would be struck by an approaching vehicle traveling at a substantial rate of speed, operated by a driver unaware of an approaching school bus stop.

The School District Defendants cite the nonbinding case of *Estate of Viola v. Township of Bensalem*, 96 F. Supp.3d 466 (E.D. Pa. 2015), and contend that in the absence of information of prior traffic accidents at the site, or complaints about its safety, the facts are insufficient to establish foreseeability to a degree that would "shock the conscience of the court in a constitutional sense." [ECF No. 21, p. 4]. Apart from conflating two of the four factors, the Third Circuit has held that with regard to such an inquiry, imposing a requirement of concrete knowledge of the specific harm is inappropriate. *L.R. v. School District of Philadelphia*, 836 F.3d 235, 245 (3d Cir. 2016). Rather, a "plaintiff must only 'allege an awareness on the part of the state actors that rises to the level of actual knowledge *or an awareness of risk* that is sufficiently concrete to put the actors on notice of the harm.'" *Id.* (quoting *Phillips v. County of Allegheny*, 515 F. 3d at 237 (emphasis in original)). The Court concluded, in the case before it, "that the risk of harm in releasing a five-year-old child to a complete stranger was obvious," and that "ordinary common sense and experience" is sufficient to inform defendants of the risk presented. *L.R. v. School District of Philadelphia,* 836 F.3d at 245 (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1208 (3d Cir. 1996)).

Here, "ordinary common sense and experience" should inform of the risks associated with a school bus stop that required an eleven year-old boy to cross an unmarked roadway at a location controlled only by a 50 mph speed zone, with substantial visibility issues presented by

10

the contour of the road and typical weather conditions. Plaintiff's allegations satisfy the first element.

Next, the Court must consider whether the School District Defendants' actions in selecting and approving the bus stop location "shock the conscience," so as to satisfy the second element of a state-created danger claim. "The exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case." *Mann*, 2017 WL 4172055, at *3 (quoting *Estate of Smith v. Marasco*, 430 F.3d 140, 153 (3d Cir. 2005) (internal citation omitted)).

> If the circumstances are highly pressurized, it is necessary to show intentional harm by the state actor; however, if the state actor has the benefit of deliberation, then all the plaintiff needs to show is deliberate indifference. Moreover, in cases "involving something less urgent than a 'split-second' decision but more urgent than an 'unhurried judgment,'" the relevant inquiry is whether the state actor "consciously disregarded a great risk of harm," with the possibility that "actual knowledge of the risk may not be necessary where the risk is 'obvious.'"

*Id*. The complaint makes clear that the selection and approval of school bus stops was not urgent and permitted time for thoughtful deliberation. Plaintiff therefore need only allege a "conscious disregard of a substantial risk of serious harm" to satisfy the conscience-shocking element of her claim. At this early stage of the litigation, Plaintiff has met this criterion given the School District Defendants' alleged disregard to known and obvious dangers presented to a young boy crossing a roadway under the conditions stated to be present at the bus stop.

The third element requires Plaintiff to establish a relationship between the state and the decedent such that Noah was a foreseeable victim of the Defendants' conduct. *L.R. v. School District of Philadelphia*, 836 F.3d at 247. This element does not appear to be challenged, given Noah's status as a student in the Wattsburg School District.

11

The final element requires an affirmative use of authority that created a danger to the Plaintiff's son or that rendered him more vulnerable to danger than had the state not acted at all. The Third Circuit has framed this inquiry as requiring an evaluation of "the 'status quo' of the environment before the alleged act or omission occurred, and then to ask whether the state actor's exercise of authority resulted in a departure from that status quo." *Id.* at 243. Plaintiff's complaint indicates that with the 2016-2017 school year, Noah's afternoon bus stop was configured to require him to cross State Road 430 to reach his home. It was only after the School District Defendants used their authority to place Noah's bus stop across the roadway, that Plaintiff's decedent was placed in a vulnerable position to a foreseeable and direct risk of harm. Such actions, if shown to be true, amount to an affirmative misuse of state authority sufficient to support a state-created danger claim. *See Mann*, 2017 WL 4172055, at *4; *L.R. v. School District of Philadelphia*, 836 F.3d at 244.

### 2. Whether the Right was Clearly Established

Having determined that Plaintiff has sufficiently alleged a violation of her son's substantive due process rights, it must next be determined whether the right was clearly established at the time the school bus route was altered such that qualified immunity does not bar her claim. While Plaintiff appears to have misapprehended the necessity to address this prong of Defendants' argument, the complaint alleges facts sufficient to show that the School District Defendants violated Noah's clearly established right to be free from placement in a position of likely or obvious physical harm.

"Clearly established law" for purposes of qualified immunity means

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has

> previously been held unlawful, but it is to say that in the light of pre-existing law, the unlawfulness must be apparent.

*Mann*, 2017 WL 4172055 at *4 (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). With regard to the Fourteenth Amendment right asserted here, the Third Circuit has noted that "[i]t has been clearly established in this Circuit for nearly two decades that a state-created danger violates due process." *Estate of Lagano v. Bergen County Prosecutor's Office*, 769 F.3d 850, 859 (3d Cir. 2014) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir.1996) (holding that state-created danger theory is "viable mechanism for establishing a constitutional violation.")).

Thus, in *L.R. v. School District of Philadelphia,* 836 F.3d at 248-49, the Third Circuit resolved the issue of qualified immunity against a School District where a kindergarten teacher permitted a student to leave his classroom with an unidentified adult, and the child was later sexually assaulted. The Court held that this conduct violated a "clearly established right" "not to be removed from a safe environment and placed into one in which it is clear that harm is likely to occur, particularly when the individual may, due to youth or other factors, be especially vulnerable to the risk of harm." *Id.* The Court further cited with approval *White v. Rochford*, 592F.2d 381, 386 (7th Cir. 1979), which found actionable the conduct of police officers who arrested an adult relative for drag racing, but left children who were riding in the car on a major highway on a cold evening, requiring them to find their way home. The Seventh Circuit concluded that this conduct "violated the children's 'right to be free from unjustified intrusions upon physical and emotional well-being.'" A concurring opinion cited with approval in *L.R. v. School District of Philadelphia*, noted that by failing to provide alternative protection, "the officers unnecessarily exposed the children to obvious hazards." *L.R. v. School District of*

*Philadelphia*, 836 F.3d at 249 (citing *White v. Rochford*, 592 F. 2d at 387-88 (Tone, J., concurring)).

In the present case, Plaintiff has alleged that the School District Defendants were aware of the dangerous conditions presented by the particular bus stop at issue, as well as state statutes and regulations imposing upon them a duty to provide safe passage from a school bus to the "right side" of the roadway, to avoid the obvious danger created of having students cross a roadway. ECF No. 1-1, ¶ 149. Plaintiff's allegations plausibly state a claim that the School District Defendants knowingly removed Plaintiff's decedent from the safety of his school bus, and placed him at an obvious risk of grievous harm. As with the police officers in *White v. Rochford, supra*, the School District Defendants' conduct, if proven, is not shielded by the doctrine of qualified immunity. "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mann,* 2017 WL 4172055, at *6 (quoting *Ashcroft v. al-Kidd* 563 U.S. 731, 743 (2011)). At this stage of the litigation, under the circumstances alleged, Defendants have not established their entitlement to qualified immunity. Accordingly, it is respectfully recommended that the School District Defendants' motion to dismiss be denied.

### E. Sanden and Durham School Services

#### 1. Rule 12(b)(6) Motion to Dismiss

Defendants Sanden and Durham seek dismissal of Plaintiff's claims against them, on the basis that the allegations set forth in Plaintiff's complaint, if taken as true, fail to establish that their conduct was the proximate cause of the accident. In particular, the moving defendants cite Plaintiff's allegations that the accident was the fault of Defendant Rodland in violating Pennsylvania's "School Bus Stopping Law," and/or the fault of the School District Defendants in

selecting the bus route that placed Plaintiff's decedent in a foreseeable position of harm. Accordingly, they contend that allocating legal responsibility for Plaintiff's injuries to them would impermissibly render them guarantors of passenger safety without legal justification.

To establish a *prima facie* case of negligence under Pennsylvania law, the following principles apply:

> (1) In order to recover, a plaintiff must prove by a fair preponderance of the evidence that the defendant was negligent, and that his negligence was the proximate cause of the accident;
>
> (2) ... the mere happening of an accident or an injury does not establish negligence nor raise an inference or a presumption of negligence nor make out a prima facie case of negligence[.]

*Amon v. Shemaka*, 214 A.2d 238, 239 (Pa. 1965). Thus, to succeed in a negligence action, a plaintiff must prove all of the following elements: "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) a causal relationship between the breach and the resulting injury suffered by the plaintiff; and (4) actual loss suffered by the plaintiff." *See Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1126 (Pa. Super. Ct. 2004).

"To satisfy the requirement of causation, the complainant must demonstrate that the breach was both the proximate cause and the actual cause of his injury." *Reilly v. Tiergarten Inc.*, 633 A.2d 208, 210 (Pa. Super. Ct. 1993) (citing *McDonald v. Marriott Corp.*, 564 A.2d 1296, 1298 (Pa. Super. Ct. 1989)). In the present case, Defendants contest only the existence of legal, or proximate, causation, asking the Court to exercise its "gate-keeper function with respect to causation." [See ECF No. 5, at 9].

"Proximate cause does not exist when the causal chain of events resulting in plaintiff's injury is so remote as to appear highly extraordinary that the conduct could have brought about the harm." *Dudley v. USX Corp.*, 606 A.3d 916, 923 (Pa. Super. Ct. 1992) (citations omitted).

15

For purposes of determining whether a defendant's negligence is the proximate cause of the plaintiff's injury, Pennsylvania courts utilize the "substantial factor" test set forth in the Restatement of Torts. *Juarez v. Friess*, 2016 WL 406252, at *9 (W.D. Pa. Feb. 3, 2016); *Stamper-Murray v. U.D.H. Mgmt. Corp.*, 2015 WL 3840937, at *4 (M.D. Pa. June 22, 2015).

To determine whether an actor's conduct is a substantial factor in causing harm to another, courts consider several factors, including:

> (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it; (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; and (c) lapse of time.

*Willard v. Interpool, Ltd.*, 758 A.2d 684, 688 (Pa. Super. Ct. 2000) (quoting *American Truck Leasing, Inc. v. Thorne Equipment Co.*, 583 A.2d 1242, 1243 (Pa. Super. Ct. 1991)); *see also Restatement (Second) of Torts* § 433. Thus, this Court must decide whether Defendants' conduct, even if a factual or "but for" cause of Plaintiff's injuries, was so trivial that "no ordinary mind would think of it as a cause for which a defendant should be held responsible." *Herman v. Welland Chemical, Ltd.*, 580 F. Supp. 823, 827 (M.D. Pa.1984) (quoting *Ford v. Jefferies*, 379 A.2d 111, 114 (Pa. 1977)).

Applying this standard to the allegations of Plaintiff's complaint, the Court finds that Plaintiff has adequately stated a claim against both Sandin and Durham. While the Complaint alleges that Sandin "activated his amber lights" as he approached the bus stop, the complaint also alleges that he failed to ensure the roadway was clear before permitting Noah to exit the bus, and that he failed to "keep [a] proper lookout for approaching traffic." [ECF 1-1, ¶ 130]. These acts are alleged to have violated a duty, as a school bus driver, to act reasonably so as not to harm the

16

decedent or place him at greater risk of harm.  As to Durham, Plaintiff alleges that it too had an obligation to act reasonably, and failed to do so, based upon its alleged participation in creating an unreasonably dangerous bus route that required Noah to cross a high speed highway with sight distance limitations.  Durham is also alleged to be vicariously liable for Sandin's conduct, as his employer.  These allegations, read in a light most favorable to her as the non-moving party, sufficiently allege a causal connection between the actions or inactions of Defendant Sandin and/or Defendant Durham and the injuries sustained by Plaintiff.  Accordingly, it is recommended that the motion to dismiss Plaintiff's claims against Sandin and Durham be denied.

## 2. **Motion to Strike Pursuant to Fed. R. Civ. P 12(f)**

Defendants Sanden and Durham urge the Court to strike Plaintiff's claims of recklessness as to them, and to strike allegations related to Durham's participation in the establishment of the bus route at issue, and its failure to request the erection of school bus warning signs at the location at issue. [ECF No. 5, pp. 10, 12].

Defendants first argue that Plaintiff has not pleaded a claim for punitive damages, and so allegations of recklessness are not material to Plaintiff's claims. Plaintiff states she has no objection to granting the motion without prejudice to reasserting a claim for punitive damages should discovery indicate her entitlement to such recovery. [ECF No. 10, p. 14].  Rule 15(c) of the Federal Rules of Civil Procedure permits the addition of a punitive damages claim following the expiration of the limitations period where the requested punitive damages relate back to the date of the original complaint. *Estate of Grier ex rel. Grier v. Univ. of Pennsylvania Health Sys.*, 2009 WL 1652168, at *9 (E.D. Pa. June 11, 2009) (citing *Gunnip v. Warner Co.*, 43 F.R.D. 365, 367–68 (E.D. Pa. 1968) (allowing the plaintiff to amend the complaint to add a claim for

punitive damages under Rule 15(c) after the expiration of the statutory limitations period because the amendment relied upon the same facts and claims set forth in the original complaint)). Accordingly, it is respectfully recommended that Defendant's motion to strike "recklessness" from Paragraph 135 of the Complaint be granted without prejudice to Plaintiff's ability to assert a punitive damages claim, should discovery reveal her entitlement to do so.

Durham also seeks to strike any mention of a duty it allegedly owed regarding the establishment of Noah's bus route or the erection of warning signs at the location of his bus stop. [ECF No. 5, p. 12]. At this stage of the proceedings, before discovery, it is not yet known whether Durham guided or participated in selecting the route for Bus #5 or the bus stop at issue and, if it did, whether it may have breached a duty of care owed to Plaintiff in its role as the Wattsburg School District transportation vendor. *See e.g.*, *I.R. ex rel. Robinson v. Peirce*, 2012 WL 6681807, at *1 (M.D. Pa. Dec. 21, 2012) (heightened duty of care owed by a common carrier for school-children) (citing *Lebanon Coach Co. v. Carolina Cas. Ins. Co.,* 675 A.2d 279, 291 (Pa. Super. Ct. 1996)). Accordingly, it is respectfully recommended that the motion to strike the references to duties that may have been owed by Durham at Paragraphs 66 and 78 be denied.

## III. Conclusion

For the foregoing reasons, is it respectfully recommended that the School District Defendants' motion to dismiss [ECF No. 6] be denied. It is further recommended that the motion to dismiss and motion to strike filed on behalf of Defendants Sandin and Durham [ECF No. 4] be denied as to the dismissal of Plaintiff's complaint, and denied as to references to duties that may have been owed by Durham at Paragraphs 66 and 78 of the complaint, but granted without prejudice as to the motion to strike references to "recklessness" from Paragraph 135.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b) (1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed fourteen (14) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights. *See e.g., Nara v. Frank*, 488 F.3d 187, 2007 WL 1321929 (3d Cir. May 8, 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: November 28, 2017

cc: The Honorable Nora Barry Fisher
United States District Judge

All counsel of record via CM/ECF